**Richard W. LEE, Plaintiff–Appellee,**

v.

**Corinne SANDBERG, Individually and as Police Officer, Connecticut State Police; Steven Roy, Trooper, individually and as Police Officer, Connecticut State Police; Brian Kennedy, Sargeant, individually and as Police Officer, Connecticut State Police, Defendants–Appellants.**

**No. 73, Docket 96–9671.**

United States Court of Appeals, Second Circuit.

Argued Aug. 25, 1997.

Decided Dec. 19, 1997.

96

Ann E. Lynch, Assistant Attorney General, Hartford, CT (Richard Blumenthal, Attorney General of the State of Connecticut, Stephen R. Sarnoski, Assistant Attorney General, Hartford, CT), for Appellants.

Steven M. Basche, Manchester, CT (Jacobs, Walker, Rice & Basche, Manchester, CT), for Appellees.

Before: MESKILL and JACOBS, Circuit Judges, and TSOUCALAS, Judge.*

MESKILL, Circuit Judge:

Connecticut State Troopers Corinne Sandberg, Steven Roy and Brian Kennedy[1] (collectively, the "State Troopers") appeal from an order of the United States District Court for the District of Connecticut, Eginton, *J.*, denying their motion for summary judgment on the basis of qualified immunity. Plaintiff Richard Lee commenced this 42 U.S.C. § 1983 civil rights lawsuit against the State Troopers, alleging that they violated his Fourth Amendment and Fourteenth Amendment rights when they arrested him without

---

* Honorable Nicholas Tsoucalas of the United States Court of International Trade, sitting by designation.

1. The plaintiff's basis for naming Sgt. Brian Kennedy as a defendant in this action is unclear. The factual record does not indicate that Sgt. Kennedy was an actual participant in plaintiff's arrest. Whether he is properly named a defendant in this action need not be addressed, however, because we order dismissal of plaintiff's claims against all named State Troopers.

probable cause. The issue presented for review is whether the State Troopers' arrest of plaintiff, under the factual circumstances presented in this case, was "objectively reasonable," thereby entitling the State Troopers to qualified immunity. We conclude the State Troopers' arrest of plaintiff was "objectively reasonable" and that they are therefore entitled to qualified immunity. Consequently, we vacate the order of the district court and remand for entry of summary judgment for the State Troopers. Because of the disposition of plaintiff's federal cause of action at the outset of this lawsuit, we order dismissal of plaintiff's supplemental state law claims for lack of jurisdiction.

### BACKGROUND

Shortly after 5:00 p.m. on November 24, 1994, Thanksgiving Day, Connecticut State Troopers Corinne Sandberg, Edward Decker, and Steven Roy were dispatched to 294 Tolland Stage Road in Tolland, Connecticut, to investigate a domestic disturbance at the home of plaintiff Richard Lee and his wife, Jean Lee.

Troopers Decker and Roy were the first officers to arrive at the Lee home. The officers found the plaintiff in his garage. Plaintiff described his dispute with Mrs. Lee to Troopers Decker and Roy. According to the plaintiff, he and his wife had just returned from a friend's home that evening where they had Thanksgiving dinner. At the dinner, a friend had commented that Mrs. Lee's diamond ring was small. Mrs. Lee, who reported this comment to her husband, became angry when plaintiff, rather than taking immediate action, said that he would confront the friend the following day.

Mr. Lee told the officers that when he went into their bedroom to watch television Mrs. Lee followed him and asked him to change the channel. Mr. Lee agreed, but told Mrs. Lee that he would go downstairs to watch another television set. As Mr. Lee was about to exit the room, Mrs. Lee blocked his path. Mr. Lee said that he used his arm to move Mrs. Lee out of the way as he left

the room, but that he did not push her forcefully or strike her. Mr. Lee also disclosed to Troopers Decker and Roy that Mrs. Lee was seeing a psychiatrist who prescribed several prescription drugs for Mrs. Lee's depression/anxiety problems.

Trooper Sandberg arrived at the location at about this time and Troopers Decker and Roy recounted to her what the plaintiff had told them. Trooper Sandberg then went inside the home to speak to Mrs. Lee. Mrs. Lee initially reported that Mr. Lee had pushed her in the chest when they were in the garage. Mrs. Lee began to cry as she described how small her diamond ring was. Trooper Sandberg noted Mrs. Lee's disheveled appearance—Mrs. Lee was wearing a bathrobe and dried, white saliva stained the corners of her mouth. Her eyes were red and glassy and her speech was slurred. Mrs. Lee admitted that she had consumed four glasses of wine that afternoon. Trooper Sandberg then asked Mrs. Lee to repeat where she was in the house when Mr. Lee pushed her. Mrs. Lee changed her earlier account and stated that in the bedroom Mr. Lee pushed her twice and in the living room once.[2] Although Trooper Sandberg made no mention of hospitalization, Mrs. Lee stated that she did not want to be tied up and taken to a hospital. Mrs. Lee stated that she had no pain or bruise on her chest where Mr. Lee had allegedly pushed her.

Mr. Lee showed the Troopers a letter dated June 15, 1994 from Dr. Richard Meyer, Mrs. Lee's treating psychiatrist. The letter stated that Mrs. Lee was subject to episodes that caused her to lose control of her behavior and that Mrs. Lee should be brought to the hospital when such episodes occurred. Mr. Lee described Mrs. Lee's behavior during these episodes, stating that she would be "here one minute and then totally out of it," would say things that did not make sense and would become very emotional. Mr. Lee also stated that Mrs. Lee was on medication for this condition.

*Sandberg,* 1996 WL 776579, at *3 (D.Conn. Nov. 14, 1996).

---

**2.** The district court's opinion erroneously stated that Mrs. Lee had reported to Trooper Sandberg that she had been "punched" three times. *Lee v.*

Trooper Sandberg, concerned about the possible effects of mixing the medication with alcohol, attempted to phone Dr. Meyer, who was unavailable. She spoke instead to Dr. Lee Brauer who was the on-call psychiatrist. Trooper Sandberg told Dr. Brauer that she intended to request an emergency medical examination pursuant to Connecticut General Statute § 17a–503 [3] and that Trooper Sandberg would complete the necessary Form MHCC–1, the police emergency examination request. Dr. Brauer, hearing of Mrs. Lee's alcohol consumption and her erratic behavior, agreed that Mrs. Lee should be brought to Hartford Hospital for evaluation and stated that he would personally examine her. Trooper Roy testified in his deposition that he concurred with Trooper Sandberg's decision to seek a medical evaluation of Mrs. Lee.

While waiting for an ambulance to arrive, Mrs. Lee requested permission to get dressed. Trooper Sandberg refused and only allowed Mrs. Lee to put on footwear. Trooper Sandberg also denied Mrs. Lee's request to take her birth control pills to the hospital, allowing her only to take some chewing gum. Trooper Sandberg accompanied Mrs. Lee to the bathroom to get her slippers. Mr. Lee and Trooper Roy were there collecting Mrs. Lee's medications. Mrs. Lee, spying her two-karat diamond ring on the sink vanity, picked it up and threw it at the toilet, stating "Here's the ring and as far as I'm concerned you can f——ing flush it down the toilet." The ring missed the toilet and deflected off the rim of the seat. Mr. Lee picked up the ring and placed it in his pocket.

Shortly thereafter, the ambulance arrived. Trooper Sandberg remained at the residence and obtained a written statement from Mr. Lee, who repeated what he had told Troopers Decker and Roy earlier. Trooper Sandberg, in her subsequent deposition, stated that Mr. Lee was calm throughout the incident and that he was not hostile to Mrs. Lee or the Troopers. Mr. Lee told Trooper Sandberg that he did not hit Mrs. Lee and Trooper Sandberg later testified that she believed him. Mr. Lee was not arrested after this initial incident.

Trooper Sandberg, shortly after this incident, spoke to 911 Dispatcher Gentile who handled the initial 911 call from Mrs. Lee reporting the domestic disturbance. Gentile stated that when her call was received, Mrs. Lee blurted out that she wanted a restraining order against her husband. Mrs. Lee, according to Gentile, stated that Mr. Lee had belittled her in front of relatives and that her diamond ring was small. Gentile reported that Mrs. Lee was not always coherent during the conversation; for example, one moment Mrs. Lee was speaking about Mr. Lee's past arrest for fraud and then Mrs. Lee jumped to a statement that she wanted a restraining order against her husband.

At approximately 9:50 p.m. that same evening, Trooper Sandberg was again dispatched to the Lee residence on a second domestic disturbance report. When she arrived, Mrs. Lee was standing in the garage. Mrs. Lee told Trooper Sandberg that Mr. Lee had assaulted her, hitting her forearm with a "karate-chop." Trooper Sandberg, however, did not see any signs of physical assault on Mrs. Lee's arm, such as bruising or swelling.

Trooper Sandberg entered the residence with Mrs. Lee and found Mr. Lee on the phone with Dr. Brauer. Trooper Sandberg then spoke to Dr. Brauer, who explained that Mrs. Lee had been evaluated and released. Dr. Brauer stated that although his examination revealed that Mrs. Lee was slightly intoxicated, she was not dissociating and could accurately relate facts as to the alleged phys-

---

**3.** Section 17a–503 of the Connecticut General Statutes provides, in pertinent part:

(a) Any police officer who has reasonable cause to believe that a person has psychiatric disabilities and is dangerous to himself, herself, or others ..., and in need of immediate care and treatment, may take such person into custody and take or cause such person to be taken to a general hospital for emergency examination under this section. The officer shall execute a written request for emergency examination detailing the circumstances under which the person was taken into custody, and such request shall be left with the facility. The person shall be examined within twenty-four hours and shall not be held for more than seventy-two hours unless committed under section 17a–502.

Conn. Gen.Stat. Ann. § 17a–503(a) (West Supp. 1997).

ical assault. Dr. Brauer told Trooper Sandberg that although he had not received the Form MHCC–1 at the time he evaluated Mrs. Lee, his evaluation would not have been different had he read the form.

At approximately 11:00 p.m., Trooper Roy arrived at the Lee residence. Trooper Roy obtained a written statement from Mr. Lee of the following events. Mr. Lee had been sleeping and was awakened by Mrs. Lee's return from the hospital. He went downstairs and saw Mrs. Lee rummaging through his pants pockets to find cab fare to pay her driver. Mrs. Lee paid the driver and accused her husband of stealing her ring and cursed at him. Mrs. Lee told him that he was "f——ed" and that he would be "kissing her ass for the rest of her life." Mr. Lee also stated that he did not physically touch Mrs. Lee or harm her in any way. According to him, he called the Connecticut State Troopers to report this second domestic disturbance.

Trooper Sandberg obtained a written statement from Mrs. Lee. Mrs. Lee, however, refused to provide a written statement until Trooper Sandberg gave Mrs. Lee directions to the Connecticut State Troopers' barracks so that Mrs. Lee could file a written complaint against Trooper Sandberg. Mrs. Lee was apparently angry at Trooper Sandberg because the Trooper had not allowed Mrs. Lee to get dressed before going to the hospital. Trooper Sandberg, in her later deposition, testified that she noticed a change in Mrs. Lee's appearance. Mrs. Lee was no longer glassy-eyed and she was clear and concise. Trooper Sandberg's description of Mrs. Lee, however, differed from that of Trooper Roy, who stated in his deposition that Mrs. Lee appeared much the same during this second domestic disturbance as during the first disturbance. Mr. Lee, again, however, was calm and cooperative throughout this second disturbance.

In her written statement, Mrs. Lee stated that she had returned home from the hospital at approximately 9:00 p.m. Mrs. Lee stated that her husband came downstairs and told her that their home was his, that she did not belong there and that she belonged at Hartford Hospital. Mrs. Lee responded that she had been released from the hospital and wanted her diamond ring back. Mr. Lee told her he did not know where it was. Mrs. Lee then told him that she was going to flush some prescription drugs down the toilet. She went into the bedroom and reached for the bureau drawer where they were located. According to her written statement, Mr. Lee then "karate-chopped" her forearm and told her to get out of his belongings and to get out of the house. At that point, Mrs. Lee alleged that she telephoned the police to make a complaint.

Mrs. Lee told Trooper Sandberg that she suffered no pain or injury to her arm. Mrs. Lee also stated that Mr. Lee kept firearms in their home. When Trooper Sandberg questioned Mr. Lee about this he stated that although he actually had only one firearm in the house, he lied to Mrs. Lee about the presence of multiple firearms in their home to keep her off balance in case she tried to use the firearm.

After this second incident, Trooper Sandberg decided to arrest Mr. Lee on a charge of disorderly conduct, a violation of Connecticut General Statute § 53a–182. Trooper Roy took Mr. Lee into custody and transported him to Troop C where he was processed and released on a $500 non-surety bond.

On May 9, 1995, Mr. Lee brought this 42 U.S.C. § 1983 civil rights action against the State Troopers. He amended his complaint on July 13, 1995. In his amended complaint, Mr. Lee alleged deprivation of his constitutional right not to be arrested without probable cause under the Fourth and Fourteenth Amendments of the United States Constitution. He also alleged two state law tort claims for false arrest and false imprisonment. The State Troopers answered the amended complaint, setting forth two affirmative defenses for qualified immunity and immunity under Connecticut General Statute § 46b–38a *et seq.* On May 17, 1996, the State Troopers filed a motion for summary judgment arguing that they were entitled to qualified immunity on the basis of their "objectively reasonable" belief that they had probable cause to arrest Mr. Lee, the plain-

tiff, for disorderly conduct on November 24, 1994.[4] On July 1, 1996, plaintiff filed his objection to the motion for summary judgment.

On November 13, 1996, the district court denied the motion for summary judgment. The district court held that the issue of whether the State Troopers had probable cause to arrest plaintiff hinged on whether Mrs. Lee was a credible informant. The district court noted that "[d]uring the troopers' first visit to the Lees' home[,] Trooper Sandberg did not believe Mrs. Lee" was credible because Mrs. Lee was inconsistent in her report as to whether plaintiff had hit her once or three times, her appearance was disheveled and she behaved erratically. *Lee v. Sandberg*, 1996 WL 776579, at *6 (D.Conn. Nov. 14, 1996). Trooper Sandberg was also aware of Mrs. Lee's psychiatric problems. As the district court observed, "just three hours later, in a setting not unlike the first, Trooper Sandberg accepts as credible Mrs. Lee's statements that Mr. Lee assaulted her." *Id.* Concluding that a genuine issue of material fact remained as to Mrs. Lee's credibility, the district court, construing disputed factual issues in plaintiff's favor, held that "a jury could well find the [State Troopers'] actions in arresting Mr. Lee for disorderly conduct were objectively unreasonable—*i.e.* that no reasonable officer, viewing the totality of the circumstances, could conclude that there was probable cause to arrest [the plaintiff] for disorderly conduct." *Id.* at *7. The State Troopers filed a timely appeal on December 9, 1996.

We disagree with the decision of the district court, vacate the order and remand with instructions to grant the State Troopers' motion for summary judgment and dismiss the state law claims for lack of jurisdiction. We must first examine plaintiff's argument that the district court's denial of summary judgment is not appealable before addressing the merits of the appeal.

## DISCUSSION

### A. Appellate Jurisdiction

■ Mr. Lee, plaintiff-appellee, argues that the district court's denial of summary judgment is not appealable because an issue of fact remains as to Mrs. Lee's credibility. He asserts that because the existence of probable cause to arrest hinged on whether Mrs. Lee was in fact a credible informant, the question of qualified immunity cannot be decided without a jury determination of Mrs. Lee's credibility. *See Cartier v. Lussier,* 955 F.2d 841, 844 (2d Cir.1992) ("[I]f a factual determination is a necessary predicate to the resolution of whether qualified immunity is a bar, review is postponed."). Based on the following, we conclude that because there is no need to determine whether Mrs. Lee was in fact a credible informant for purposes of qualified immunity, no issue of fact bars appellate review. Accordingly, the district court's judgment is appealable. A brief review of our qualified immunity standard is necessary to explain our decision on the jurisdictional issue.

■ The qualified immunity defense is intended to "strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Jemmott v. Coughlin,* 85 F.3d 61, 66 (2d Cir.1996) (citations and internal quotation marks omitted); *see Anderson v. Creighton,* 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Cartier,* 955 F.2d at 844. The qualified immunity doctrine protects government officials from civil liability in the performance of discretionary functions "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson,* 483 U.S. at 638, 107 S.Ct. at 3038; *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (qualified immunity provides "ample protection to all but the

---

4. The State Troopers also argued that they enjoyed absolute statutory immunity under Connecticut General Statute § 46b–38a *et seq.* against any state law tort causes of action arising

from an arrest for which there existed probable cause. Because we order plaintiff's state law claims dismissed for jurisdictional reasons, we do not address this second defense.

plainly incompetent or those who knowingly violate the law").

Specifically, government officials are shielded from liability when their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Even if a clearly established statutory or constitutional right is violated, qualified immunity is nonetheless a defense if the officers' unlawful actions were *objectively reasonable* "as measured by reference to clearly established law," *id.* (footnote omitted), and "the information the ... officers possessed," *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3040; *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987) ("[E]ven if the contours of the plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights.").

In light of this well established standard for qualified immunity, we now turn to consider whether the district court's conclusion that there existed a genuine issue as to Mrs. Lee's credibility stands as a bar to appellate review of the denial of the summary judgment motion.

Under the collateral order doctrine certain non-final orders are "final decisions" within the meaning of 28 U.S.C. § 1291, and are immediately appealable. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949); *see also Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144–45, 113 S.Ct. 684, 687–88, 121 L.Ed.2d 605 (1993). A district court's denial of a defendant's motion for summary judgment is an immediately appealable collateral order when "(1) the defendant was a public official asserting a defense of 'qualified immunity,' and (2) the issue appealed concerned, not which facts the parties might be able to prove, but, rather, whether or not certain given facts showed a violation of 'clearly established' law." *Johnson v. Jones*, 515 U.S. 304, 311, 115 S.Ct. 2151, 2155, 132 L.Ed.2d

238 (1995) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985)). In other words, this Court has jurisdiction over a denial of a motion for summary judgment, where qualified immunity is raised as a defense, and the factual claims in the lawsuit are undisputed. *See Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir.1994) ("[I]mmunity ordinarily should be decided by the court ... where the facts concerning the availability of the defense are undisputed" (internal quotation marks and citation omitted)), *cert. denied*, 513 U.S. 1076, 115 S.Ct. 721, 130 L.Ed.2d 627 (1995); *see also Finnegan v. Fountain*, 915 F.2d 817, 821 (2d Cir.1990) ("Once disputed factual issues are resolved, the application of qualified immunity is ... ultimately a question of law for the court to decide."). Furthermore, "an appeal is available where the defendant accepts, for purposes of the appeal, the facts as alleged by the plaintiff ... that the district court ruled were sufficiently supported to create jury issues." *Salim v. Proulx*, 93 F.3d 86, 89 (2d Cir.1996) (citation omitted).

Here, for the purposes of this appeal and in accord with *Salim*, the State Troopers stipulate to plaintiff's factual allegations that Mrs. Lee was not a credible informant and that the State Troopers consequently did not have actual probable cause to arrest plaintiff. Therefore, despite the district court's conclusion that Mrs. Lee's credibility presented a genuine issue of material fact, we have appellate jurisdiction to review the denial of summary judgment on the basis of these facts stipulated to by the parties.

B. *The Qualified Immunity Standard Applied*

Qualified immunity is an affirmative defense. The burden rests on the defendants to raise the defense in their answer and to establish the defense on a motion for summary judgment or at trial. *In re State Police Litigation*, 88 F.3d 111, 123 (2d Cir. 1996). Because "damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties," *Anderson*, 483 U.S. at 638, 107

S.Ct. at 3038, the identification and disposal of insubstantial claims by summary judgment is encouraged. *Id.* at 640 n. 2, 107 S.Ct. at 3039 n. 2; *Butz v. Economou,* 438 U.S. 478, 507–08, 98 S.Ct. 2894, 2911–12, 57 L.Ed.2d 895 (1978); *see Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815–16 (the qualified immunity entitlement is an *"immunity from suit* rather than a mere defense to liability; and ... is effectively lost if a case is erroneously permitted to go to trial"); *In Re State Police Litigation,* 88 F.3d at 123.

 In a motion for summary judgment, the movant has the burden of showing that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *In re State Police Litigation,* 88 F.3d at 123. The court, in considering this motion, must "draw all factual inferences in favor of, and take all factual assertions in the light most favorable to, the party opposing summary judgment." *Id.* A party is entitled to summary judgment on qualified immunity grounds if the court finds that the rights asserted by the plaintiff were not clearly established, *id., or*

> no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiffs, could conclude that it was objectively unreasonable for the defendant[ ] to believe that he was acting in a fashion that did not clearly violate an established federally protected right.

*Robison,* 821 F.2d at 921 (quoting *Halperin v. Kissinger,* 807 F.2d 180, 189 (D.C.Cir. 1986)) (internal quotation marks omitted; alteration in original). A police officer has acted in an objectively unreasonable manner "when no officer of reasonable competence could have made the same choice in similar circumstances." *Lennon v. Miller,* 66 F.3d 416, 420–21 (2d Cir.1995). Therefore, the State Troopers are entitled to summary judgment if "the only conclusion a rational jury could reach is that reasonable officers would disagree about the legality of the defendants' conduct under the circumstances." *Id.* at 421; *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096 (defendants are entitled to qualified immunity if "officers of reasonable competence could disagree" as to legality of their

action). If any rational jury could find, however, that the State Troopers' actions were objectively unreasonable, then summary judgment must be denied. *Lennon,* 66 F.3d at 420.

 The right not to be arrested without probable cause is a clearly established right. *Cook v. Sheldon,* 41 F.3d 73, 78 (2d Cir.1994) ("It is now far too late in our constitutional history to deny that a person has a clearly established right not to be arrested without probable cause."). Therefore, the State Troopers are not entitled to summary judgment under the "clearly established right" prong of the qualified immunity standard.

 The State Troopers are nevertheless entitled to summary judgment on qualified immunity grounds if their actions were not objectively unreasonable at the time they were taken. We have stated, in the context of allegations of false arrest, that "[a]n arresting officer is entitled to qualified immunity from a suit for damages on a claim for arrest without probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991), *cert. denied sub nom. Lillis v. Golino,* 505 U.S. 1221, 112 S.Ct. 3032, 120 L.Ed.2d 902 (1992); *Myers v. Morris,* 810 F.2d 1437, 1455 (8th Cir.) ("The issue for immunity purposes is not probable cause in fact but 'arguable' probable cause." (citation omitted)), *cert. denied,* 484 U.S. 828, 484 U.S. 828, 98 L.Ed.2d 58 (1987); *Gold v. City of Miami,* 121 F.3d 1442, 1445 (11th Cir.1997) (per curiam) ("[A]rguable" probable cause exists when "a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in the light of well-established law." (citation and internal quotation marks omitted)). Probable cause exists "when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.

1995) (citation and internal quotation marks omitted), *cert. denied,* 517 U.S. 1189, 116 S.Ct. 1676, 134 L.Ed.2d 779 (1996).[5] In fact, "[a]n arresting officer advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime, has probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity."[6] *Id.* at 119; *McKinney v. George,* 726 F.2d 1183, 1187 (7th Cir.1984) ("If policemen arrest a person on the basis of a private citizen's complaint that if true would justify the arrest, and they reasonably believe it is true, they cannot be held liable for a violation of the Constitution merely because it later turns out that the complaint was unfounded."); *State v. Amarillo,* 198 Conn. 285, 310, 503 A.2d 146, 161 (1986) ("It is generally agreed ... that a comparable showing [of reliability] is not needed to establish veracity when the information comes from an average citizen who is in a position to supply information by virtue of having been a crime victim." (citation and internal quotation marks omitted; alterations in original)); *Miloslavsky v. AES Eng'ring Soc'y,* 808 F.Supp. 351, 355 (S.D.N.Y.1992) ("The veracity of citizen complaints who are the victims of the very crime they report to the police is assumed."), *aff'd,* 993 F.2d 1534 (2d Cir.1993), *cert. denied,* 510 U.S. 817, 114 S.Ct. 68, 126 L.Ed.2d 37 (1993).

A review of the circumstances of this case reveals that while the State Troopers, as stipulated, did not in fact have actual probable cause to arrest the plaintiff, they certainly had "arguable" probable cause, and accordingly, it was objectively reasonable for the State Troopers to believe that probable cause existed. Specifically, Mrs. Lee completed and signed a witness report that explicitly warns that false statements in the report are a crime under Connecticut General Statute § 53a–157.[7] Mrs. Lee reported that plaintiff had "karate-chopped" her arm. The State Troopers therefore arrested plaintiff for disorderly conduct under Connecticut General Statute § 53a–182(a) which provides, in pertinent part, that "[a] person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he: (1)[e]ngages in fighting or in violent, tumultuous or threatening behavior." Conn. Gen.Stat. Ann. § 53a–182(a) (West 1994).

Connecticut General Statute § 46b–38b requires police officers to make arrests in domestic violence situations. It states that

(a) [w]henever a peace officer determines upon speedy information that a family violence crime, as defined in subdivision (3) of section 46b–38a,[8] has been committed

---

**5.** The State Troopers' motivation to arrest plaintiff is irrelevant to the question of probable cause. *Mozzochi v. Borden,* 959 F.2d 1174, 1179–80 (2d Cir.1992). The standard is not a subjective one. Therefore, plaintiff's suspicion that Trooper Sandberg ordered the arrest solely to appease Mrs. Lee, who had indicated her intent to file a complaint against Trooper Sandberg, is irrelevant to our probable cause consideration.

**6.** The district court cited this passage in *Singer* and concluded that an officer who relies on a complainant whose veracity may be challenged lacks qualified immunity for an arrest until a jury decides the witness was in fact credible. *See Lee v. Sandberg,* 1996 WL 776579 at *6. *Singer* does not support that result. The issue in *Singer* was whether the plaintiff stated a claim for false arrest under section 1983; the police defendant demonstrated that no claim was stated because he had probable cause for the arrest as a matter of law. *Singer* thus was not a qualified immunity case and did not employ the distinct analysis that applies in the immunity context.

**7.** Connecticut General Statute § 53a–157 has been transferred to section 53a–157b. Connecticut General Statute § 53a–157b states:
(a) A person is guilty of false statement in the second degree when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable, which he does not believe to be true and which statement is intended to mislead a public servant in the performance of his official function.
Conn. Gen.Stat. Ann. § 53a–157b(a) (West Supp. 1997); *Adams v. Williams,* 407 U.S. 143, 146–47, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612 (1972) (informant's credibility enhanced when "the informant might have been subject to immediate arrest for making a false complaint").

**8.** Section 46b–38a defines a "[f]amily violence crime," in pertinent part, as "a crime as defined in section 53a–24 which, in addition to its other elements, contains as an element thereof an act of family violence to a family member." Conn. Gen.Stat. Ann. § 46b–38a(3) (West 1995). Section 53a–24(a), in pertinent part, defines "crime" as comprised of felonies and misdemeanors that

**104**

within his jurisdiction, he shall arrest the person or persons suspected of its commission and charge such person or persons with the appropriate crime.

Conn. Gen.Stat. Ann. § 46b–38b(a) (West 1995). This statute reflects the legislature's attempt to eliminate indifference by law enforcement agencies when responding to reports of domestic violence and to prevent further injury to victims of family violence. An Act Concerning Family Violence Prevention and Response, 1986 Conn. Acts 337 (Reg.Sess.); 29 H.R. Proc., Pt. 14, 1986 Sess., pp. 5251–72; *United States v. Warden,* 886 F.Supp. 813, 817 (D.Kan.1995) (where police department policy mandates arrest in all cases of domestic violence, wife's statement that husband pushed her is enough for probable cause to arrest).

Moreover, the State Troopers arrested plaintiff after speaking to Dr. Brauer who informed the State Troopers that Mrs. Lee was not dissociating and could accurately relate facts about her alleged assault. The State Troopers' decision to refrain from arresting plaintiff after the first incident was precautionary; Mrs. Lee's demeanor suggested she might either be intoxicated or dissociating. On receiving confirmation from Dr. Brauer that Mrs. Lee was not dissociating and could accurately relate facts about her alleged assault, however, the State Troopers' initial doubts about Mrs. Lee's mental state were dispelled. At that point it was not unreasonable for the State Troopers to believe there was probable cause to arrest the plaintiff. *Clay v. Conlee,* 815 F.2d 1164, 1168 (8th Cir.1987) (even where victim of rape was intoxicated and appeared "fuzzy-headed" when she first arrived at the hospital, arrest of defendant was supported by probable cause when victim was not "incoherent, irrational, confused, or intoxicated" when she spoke to police officers).

In sum, given the extraordinarily difficult judgment decisions that law enforcement officers must make in domestic violence situations, and the presence of factors here that

suggest that Mrs. Lee's statements were not incredible, we hold that as a matter of law, the State Troopers' actions were objectively reasonable. *See Hunter v. Bryant* 502 U.S. 224, 228, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991) ("[T]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed" after the fact.); *Lennon,* 66 F.3d at 424 (holding that qualified immunity is intended to "protect police from liability and suit when they are required to make on-the-spot judgments in tense circumstances"). Having concluded that the State Troopers' actions were objectively reasonable, they are entitled to qualified immunity, and accordingly, summary judgment as a matter of law.

### CONCLUSION

We hold that we have jurisdiction to review this appeal. We vacate the district court's order denying summary judgment for the State Troopers and remand to the district court with instructions to grant summary judgment to the State Troopers. We also direct the dismissal of plaintiff's state law claims for lack of supplemental jurisdiction. Costs to the appellants.

---

include assault in the third degree which is committed when a person "[w]ith intent to cause physical injury to another person, ... causes such injury to such person." Conn. Gen.Stat. Ann. § 53a–61 (West 1994); *State v. Palozie,* 165 Conn. 288, 294, 334 A.2d 468, 472 (1973) (slap in the face and poke in the nose constitute assaults).