[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Andrea Balogh has brought an eleven count complaint against the defendant City of Shelton and the defendants Thomas Adams and Joseph Kudrak, who are Shelton police officers, as a result of her arrest for violating General Statutes § 30-86 which forbids a person from delivering or giving alcoholic liquor to a minor. The defendants have moved for the entry of summary judgment on each of the eleven counts.
The incident which resulted in the plaintiff's arrest occurred on September 1, 1995. Many of the material facts are undisputed. That evening, Adams and Kudrak, who were in separate police cars, investigated a report that youths were congregating in the area of Wooster Street in Shelton and impeding traffic. During the investigation, Adams confronted a youth with a cup of beer in his hand who indicated that he was coming from the plaintiff's premises at 156 Wooster Street. Adams and Kudrak both subsequently observed a group of youths in the backyard of 156 Wooster Street and two kegs of beer on the property. They also saw a dozen or more plastic cups strewn about the yard of the premises. The police officers proceeded to check the identifications of the youths and determined that fifteen of the seventeen individuals present were not of legal drinking age.
The plaintiff was in the house at the time of the police officer's arrival at the premises. The police officers asked the plaintiff's son, Peter Balogh, who was present in the yard to summon his parents. When the plaintiff came out of the house, she discussed the situation with the police officers. The substance of that conversation is disputed. The plaintiff claims that she indicated to the defendants that she was unaware of any drinking on her property. The defendants maintain that the plaintiff made statements which indicated that she knew of the keg party and they assert that the plaintiff was uncooperative with their investigation. The plaintiff was then arrested for giving alcoholic liquor to a minor in violation of General Statutes § 30-86.[1]
"Summary judgment is a method of resolving litigation when pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . Scrapchansky v. Plainfield,226 Conn. 446, 450 (1993). In ruling on a motion for summary judgment, the court's function is not to decide issues of material fact, but CT Page 3637 rather, to determine whether any such issues exist. Cortes v. Cotton,31 Conn. App. 569, 575 (1993). [I]n deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . Johnson v. Meehan, 225 Conn. 528,535 (1993). Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . .Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578 (1990)." (Internal quotation marks omitted.) Warner v. Lancia, 46 Conn. App. 150,158 (1997). See also Practice Book § 17-49. The test is whether a party would be entitled to a directed verdict on the same facts. Suarezv. Dickmont Plastics Corp., 229 Conn. 99, 105-106 (1994).
 I Claims of False Arrest and Malicious Prosecution A COLLATERAL ESTOPPEL
The plaintiff asserts against Adams and Kudrak a claim of false arrest in the first count and a claim of malicious prosecution in the second count of her complaint. She also asserts in the seventh and eleventh counts of her complaint that the City of Shelton is statutorily liable for the actions of Adams and Kudrak in falsely arresting and maliciously prosecuting the plaintiff. The defendants maintain that they are entitled to summary judgment on all four counts because these claims are barred by the doctrine of collateral estoppel.
In July 1996, the plaintiff commenced a prior action in state court against the defendants in this action, alleging among other claims, a claim pursuant to 42 U.S.C. § 1983 for the deprivation of her civil right to be free from unlawful arrest. This action was removed by the defendants to federal court. Balogh v. City of Shelton, et al, United States District Court, District of Connecticut, Civil No. 3:96-1563. On March 30, 1998, the district court, Squatrito, J., granted summary judgment for the defendants on the plaintiff's § 1983 claim and dismissed without prejudice the pending state law claims.
The defendants contend that the plaintiff is collaterally estopped from asserting a false arrest claim and a malicious prosecution claim in this action because of the district court's grant of summary judgment on her § 1983 claim. They assert that the plaintiff is barred from relitigating the issue of whether the defendants had probable cause to arrest her, a necessary element in both her false arrest and malicious CT Page 3638 prosecution claims,[2] because Judge Squatrito found that probable cause actually existed for the plaintiff's arrest.
The plaintiff maintains that collateral estoppel does not prevent her from asserting a claim for false arrest or a claim for malicious prosecution. She argues that Judge Squatrito did not find that probable cause actually existed for the plaintiff's arrest. Rather, he ruled that the defendants were entitled to qualified immunity on the civil rights claim due to his determination that it was objectively reasonable for the defendants to believe that probable cause existed for the plaintiff's arrest.
The fundamental principles underlying the doctrine of collateral estoppel are well established. "Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment. An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined. An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered. . . . If an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent action." (Citations omitted; internal quotation marks omitted.) RR Pool Patio, Inc., v. Zoning Board of Appeals,257 Conn. 456, 466 (2001).
For the doctrine of collateral estoppel to bar the plaintiff's false arrest claim in this action, the issue of probable cause for the plaintiff's arrest must have been actually decided by Judge Squatrito and that decision must have been necessary to his grant of summary judgment. Judge Squatrito entered summary judgment for the defendants on the plaintiff's false arrest claim based on his determination that the defendant police officers were entitled to qualified immunity for their actions. An arresting officer is entitled to qualified immunity if it was objectively reasonable for the officer to believe that probable cause existed or officers of reasonable competence could disagree on whether the probable cause test was met. Lee v. Sandberg, 136 F.3d 94, 102 (2d Cir. 1997). Judge Squatrito stated in his decision that "This court finds that in the light of preexisting law, it was objectively reasonable for the officers to believe they had probable cause to arrest the plaintiff"
In support of its position that the court decided that actual probable CT Page 3639 cause existed, the defendants point to that section in Judge Squatrito's decision which states: "With this in mind, the relevant inquiry becomes whether the officers had probable cause to believe that the plaintiff was permitting the delivery of alcohol on her property. The court finds that there was." These sentences however must be read in light of the entire paragraph which addresses the issue of whether it was reasonable for a police officer to believe that a person could be liable for violating § 30-86 for permitting the delivery of alcohol on her property. The court found that it was reasonable to interpret § 30-86 to impose criminal liability on a person who permits the delivery of alcohol to a minor as well as on a person who actually delivers alcohol to a minor. As a result, Judge Squatrito found that "[A] reasonable police officer had probable cause to believe [the plaintiff] had violated § 30-86." Judge Squatrito did not find that the defendants actually had probable cause to arrest the plaintiff, only that it was reasonable for them to believe that they did. Since the issue of whether probable cause for the plaintiff's arrest actually existed was not decided by Judge Squatrito, the plaintiff is not collaterally estopped from pursuing her false arrest and malicious prosecution claims here.
Even if this court were to assume that Judge Squatrito actually decided the issue of probable cause for the plaintiff's arrest, collateral estoppel does not bar the plaintiff's claim because a decision by Judge Squatrito on that issue was not necessary to his entry of summary judgment. Since he had already determined that it was objectively reasonable for the defendants to believe they had probable cause to arrest the plaintiff, they were entitled to qualified immunity and to the entry of summary judgment on the plaintiff's § 1983 claim. It was not necessary for him to decide the issue of actual probable cause.
 B PROBABLE CAUSE AS A MATTER OF LAW
The defendants also contend that summary judgment should enter on the first, second, seventh and eleventh counts of the complaint because the defendants acted with probable cause as a matter of law. The plaintiff maintains that summary judgment is not appropriate because there is a genuine issue of material fact as to whether the defendant police officers had probable cause to arrest the plaintiff I agree with the plaintiff that factual disputes exist which make summary judgment on this issue inappropriate.
In making a finding of probable cause, the trier must determine whether the evidence offered would warrant a person of reasonable caution to believe that the accused had committed the charged offense. In re KeijamCT Page 3640T., 221 Conn. 109, 115 (1992). "Evidence is not required to rise to a significant level of trustworthiness in order to meet the probable cause standard." State v. Lewis, 245 Conn. 779, 808 (1998). "The quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction. Our cases have made clear [t]hat there is often a fine line between mere suspicion and probable cause, and [t]hat line necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances." State v. Marra, 222 Conn. 506, 513
(1992).
"Whether the facts are sufficient to establish the lack of probable cause is a question ultimately to be determined by the court, but when the facts themselves are disputed, the court may submit the issue of probable cause in the first instance to a jury as a mixed question of fact and law." DeLaurentis v. New Haven, 220 Conn. 225, 252-53 (1991). When the underlying facts concerning the existence of probable cause are in dispute, there is a constitutional right to have those facts determined by a jury. Cosgrove Development Co. v. Cafferty, 179 Conn. 670, 671
(1980).
In this case, the facts material to the issue of the existence of probable cause are contested. No direct evidence exists that the plaintiff delivered or gave alcohol to the minors who were drinking alcohol. The defendants claim that it was reasonable for them to believe that the plaintiff violated § 30-86 based on circumstantial evidence that she knew of the keg party which was attended by underage drinkers and permitted it to occur. The defendants cite uncontradicted evidence establishing the presence of two kegs of beer on the plaintiff's property, a dozen or more large red plastic cups commonly used for the consumption of beer strewn about the yard, and seventeen, individuals, fifteen of whom were underage for the consumption of alcohol.
The defendants also assert that the defendant's comments and behavior indicated that she knew of the underage drinking on the premises. They claim that she was asked if she knew there was a keg party going on and she replied "there's no problem, everyone is of age." The defendants assert that this statement evidences the plaintiff's knowledge of a party. They also maintain that she was uncooperative, appeared to have been drinking alcohol, and told them they should be out finding real criminals and not bothering kids who were simply having a good time.
The plaintiff however disputes the substance of the conversation that occurred between the plaintiff and the defendant police officers after the plaintiff exited her home to meet with the defendants. The plaintiff claims that she was not aware of any drinking of alcohol on her property CT Page 3641 and that her conversations with the defendants demonstrated that fact. The plaintiff points to her deposition testimony in which she asserts that she responded "it's impossible" both to the police officer's statement that there was underage drinking occurring on her property and to the statement that she was responsible. She has also offered evidence showing that the keg party occurred on the golf course adjacent to her property and the two kegs were on her property for only a short period of time.
The existence of probable cause for the plaintiff's arrest will rest on which version of events the fact finder chooses to believe and the reasonable inferences to be drawn from those facts.[3] Since there is a genuine issue as to material facts concerning the existence of probable cause, the defendants are not entitled to summary judgment on this issue.
 II CLAIM OF SLANDER
The defendants maintain that summary judgment should enter on the third count of the plaintiff's complaint which advances a claim of slander. In her third count, the plaintiff asserts that the defendants Adams and Kudrak telephoned the parents of youths who had been present at the keg party and "advised them that the plaintiff had been arrested for furnishing alcohol to their children." The defendants argue that this statement is true and therefore cannot be the basis of a claim of slander.
Truth is an absolute defense to a slander claim. Emerick v. Kuhn,52 Conn. App. 724, 732 n 32 (1999). See also Kelley v. Bonney,221 Conn. 549, 563 (1992) (To find that the defendants were liable for defamation, the jury was required to find that the defendants published false statements that harmed the defendant.) It is undisputed that the plaintiff was arrested for violating General Statutes § 30-86 which forbids a person from delivering or giving alcoholic liquor to a minor. The statement attributed to the defendants by the plaintiff in the third count of her complaint that the plaintiff had been arrested for furnishing alcohol to minors was therefore true and not slanderous as a matter of law.
The plaintiff contends that the defendants are not entitled to summary judgment on the third count because the defendants made additional statements that were not true. The plaintiff claims that Adams told parents that the keg party was at Peter Balogh's house and that "the parents knew it was going on." CT Page 3642
The flaw in the plaintiff's contention is that she did not include these statements by Adams as the basis for her claim of slander in the third count of her complaint. The only statement allegedly made by the defendants that the plaintiff asserts as slanderous in her complaint is the statement that the plaintiff had been arrested for furnishing alcohol to minors.[4] That statement is admittedly true and therefore the defendants are entitled to summary judgment on the third count of the plaintiff's complaint.
 III CLAIM OF ASSAULT AND BATTERY
The sixth count of the plaintiff's complaint asserts a claim for assault and battery. The defendants contend that they are entitled to the entry of summary judgment on this count because there is no genuine issue of material fact as to the reasonableness of the force used by the defendants in arresting the plaintiff The plaintiff counter that there is a factual dispute concerning whether the force used in effectuating the plaintiff's arrest was reasonable under the circumstances.
In Connecticut, a police officer, in making an arrest, may use such force as the officer reasonably believes to be necessary, under all the circumstances, to effect the arrest and prevent an escape. Martyn v.Donlin, 151 Conn. 402, 411 (1964). See also Lentine v. McAvoy,105 Conn. 528, 530 (1927) and Restatement (Second), 1 Torts § 132 (1965).
The defendants maintain that the undisputed evidence shows that the plaintiff was merely handcuffed, escorted to the police car and had her head pushed down by one of the defendants to prevent her head from striking the roof of the police car. The defendants assert that as a matter of law such force was reasonably necessary under the circumstances to effectuate the plaintiff's arrest.
The plaintiff alleges that, in the course of arresting the plaintiff, the defendants tightly handcuffed the plaintiff's wrists resulting in bruising that was visible for weeks. She also claims that the pushing down of her head by the defendants resulted in severe neck pain for which she needed to seek medical treatment. The plaintiff contends that she offered no resistance during the arrest and the force used was excessive.
This court cannot say that, should the plaintiff establish the facts that she alleges, it would be inappropriate for a jury to find that the CT Page 3643 defendants used force beyond what was reasonably necessary to effect the plaintiff's arrest. A jury could reasonably infer from the injuries the plaintiff claims to have received from the defendants' actions that the force used was not reasonably necessary under the circumstances. SeeHansen v. Black, 885 F.2d 642, 645 (9th Cir. 1989) (summary judgment is not appropriate on a claim of excessive force by police officer where arrestee alleges that handcuffs were placed on her in an abusive manner, injuring her wrist and arm).
 IV CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
The defendants have moved for summary judgment with respect to the fourth and eighth counts of the plaintiff's complaint which involve claims for the intentional infliction of emotional distress.
The plaintiff must establish four elements in order to recover for the intentional infliction of emotional distress: (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe. Petyan v. Ellis,200 Conn. 243, 253 (1986).
For the conduct to be extreme and outrageous it must be "conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Muniz v. Kravis, 59 Conn. App. 704, 708 (2000). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Appleton v. Board of Education ofStonington, 254 Conn. 205, 210-11 (2000) "Whether a defendant's conduct is sufficient to satisfy the requirement that it be extreme and outrageous is initially a question for the court to determine. Only where reasonable minds disagree does it become an issue for the jury." (Citations omitted.) Id., 210.
The plaintiff argues that the defendants engaged in extreme and outrageous conduct by arresting the plaintiff without probable cause and without an adequate investigation, using excessive force in arresting the plaintiff, and erroneously representing in the police report that the plaintiff was intoxicated and had made certain inculpatory statements.[5]
Should the plaintiff establish such facts to the satisfaction of a jury, CT Page 3644 a jury could reasonably find that the police officers engaged in an extreme abuse of their authority in a way which is intolerable in a civilized society. See Restatement (Second), 1 Torts § 46, comment e (1965) (which notes that the extreme and outrageous character of the conduct may arise from an abuse of authority by the actor and that police officers have been held liable for extreme abuse of their position). Cf.McKelvie v. Cooper, 190 F.3d 58, 63 (2d Cir. 1999) (in which the court held that the existence of genuine issues of material fact surrounding the police officers' search and detention of bar patrons precluded a summary judgment determination that the conduct was insufficiently extreme and outrageous to establish a claim for intentional infliction of emotional distress under Connecticut law).
 V CLAIM OF NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
The defendants further assert that they are entitled to qualified immunity in the performance of their discretionary duties which bars the prosecution of the negligent infliction of emotional distress claims in the fifth and ninth counts of the plaintiff's complaint. The plaintiffs contend that immunity does not attach to the defendants' actions because their acts were likely to subject an identifiable person to imminent harm.
"The common law doctrines that determine the tort liability of municipal employees are well established. Although historically a municipality itself was generally immune from liability for its tortious acts at common law; municipal employees faced the same personal tort liability as private individuals. Over the years, however, the doctrine of governmental immunity has provided some exceptions to the general rule of tort liability for municipal employees. Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. In contrast, ministerial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Citations and internal quotation marks omitted.) Mulligan v. Rioux, 229 Conn. 716, 727 (1994). It is undisputed that the actions of the defendants here involved discretionary acts.
The immunity from liability for the performance of discretionary acts is subject to three exceptions: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm; second, where CT Page 3645 a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence. Evon v. Andrews, 211 Conn. 501, 505
(1989).
The ultimate determination of whether qualified immunity applies is ordinarily a question of law for the court unless there are unresolved factual issues material to the applicability of the defense in which case the resolution of those factual issues is properly left to the jury.Mulligan v. Rioux, supra, 229 Conn. 736.
The plaintiff asserts that the defendants negligently arrested the plaintiff without probable cause and without adequate investigation and negligently injured her while handcuffing her and placing her in the patrol car. The plaintiff was unquestionably an identifiable person as it concerns these allegedly negligent actions of the defendants. The defendants' actions were specifically directed toward the plaintiff and it was clear that any negligence in the performance of their duties would directly impact her.
The critical issue in this case as it relates to the identifiable person/imminent harm exception is whether the plaintiff was subject to imminent harm by the actions of the defendants. To qualify as imminent harm, the danger must be limited in duration and the potential for harm must be significant and foreseeable. Purzycki v. Fairfield, 244 Conn. 101,110 (1998). See also Colon v. City of New Haven, 60 Conn. App. 178, 187
(2000). Sufficient evidence has been offered by the plaintiff for a jury to reasonably find that imminent harm existed in this case. A jury could reasonably determine that the plaintiff's arrest without probable cause and with excessive force subjected the plaintiff to harm that was significant, foreseeable and of limited duration. See Castorina v.Stewart, judicial district of Fairfield at Bridgeport, No. CV95-0324487 (June 3, 1998, Skolnick, J.) (the court found that a person who was allegedly falsely arrested and assaulted by a police officer could be found by a jury to be an identifiable person subject to imminent harm under the qualified immunity exception).
 VI COLLATERAL ESTOPPEL RE: QUALIFIED IMMUNITY
At oral argument on the defendants' motion for summary judgment, I posed the question whether the plaintiff was collaterally estopped from relitigating the issue of qualified immunity with respect to her common law tort claims due to Judge Squatrito's decision that the defendants CT Page 3646 were entitled to qualified immunity on the plaintiff's § 1983 claim. The parties have briefed the issue, with the plaintiff asserting that collateral estoppel does not apply because the elements of the doctrine of qualified immunity differ in the two actions. The court agrees.
In the federal action, the court entered summary judgment on the plaintiff's § 1983 claim because it found that the acts of the defendants were cloaked with qualified immunity. A police officer is entitled to qualified immunity from liability under § 1983 if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met. Lee v. Sandberg,
supra, 136 F.3d 102. The federal court determined that it was objectively reasonable for the defendants to believe that probable cause existed for the plaintiff's arrest.
The standard is quite different for determining whether the defendants' acts are protected by qualified immunity from liability for the common law torts asserted by the plaintiff A municipal employee, such as a police officer is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of discretionary acts.Mulligan v. Rioux, 229 Conn. 716, 727 (1994). Immunity fails to attach to discretionary governmental acts under any of three circumstances: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm; second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws; and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence. Evon v.Andrews, 211 Conn. 501, 505 (1989). The issue here is whether any of these situations apply to the common law torts allegedly committed by the defendants.[6] Since the standard of qualified immunity that protects public officials from liability under the common law is distinct from that which insulates them from suit under § 1983, Mulligan v. Rioux,
supra, 229 Conn. 728 and Schnabel v. Tyler, 230 Conn. 735, 742 (1994), collateral estoppel does not preclude the plaintiff from contesting the claimed qualified immunity of the defendants for their discretionary acts.
 VII SPECIAL DEFENSE OF COLLATERAL ESTOPPEL
The plaintiff has filed a cross motion for summary judgment contending that summary judgment should enter on the defendants' first special defense which asserts a claim of collateral estoppel with respect to all CT Page 3647 counts of the plaintiff's complaint. The defendants' first special defense asserts that the plaintiff is collaterally estopped from litigating whether the defendants had probable cause to arrest the plaintiff and whether the defendants' belief that probable cause existed was objectively reasonable due to the decision rendered in federal court in the matter of Balogh v. City of Shelton, et al. The plaintiff maintains that she is entitled to summary judgment as a matter of law on the collateral estoppel claim because Judge Squatrito in the federal action did not find probable cause for the plaintiff's arrest.
In part I A of this opinion, I discussed Judge Squatrito's decision inBalogh v. City of Shelton, et al. and determined that Judge Squatrito did not find that probable cause actually existed for the plaintiff's arrest. Given that I have determined that Judge Squatrito did not decide in the federal action that the defendants had probable cause to arrest the plaintiff, a claim of collateral estoppel with respect to this issue is not appropriate.
The defendants also maintain in their special defense that collateral estoppel applies because Judge Squatrito determined that it was objectively reasonable for the defendants to arrest the plaintiff Judge Squatrito did decide that it was objectively reasonable for the defendants to believe that probable cause existed for the plaintiff's arrest. See part I A, supra. However, the issue raised by the common law tort claims in this case is separate and distinct from the issue decided in the federal action. The issue here is whether the defendants had probable cause to arrest the plaintiff A finding for purposes of qualified immunity that it was objectively reasonable for police officers to believe that they had probable cause for an arrest does not ineluctably mean that probable cause actually existed for the arrest. Lennon v.Miller, 66 F.3d 416, 424 (2d Cir. 1995). See also Oliveira v. Mayer,23 F.3d 642, 649 (2d Cir. 1994) (discussing the difference between the issue of objective reasonableness and actual probable cause). The issue for immunity purposes is "arguable" probable cause, not probable cause in fact. Lee v. Sandberg, supra, 136 F.3d 103. A police office may reasonably believe that a reasonably prudent police officer would have acted even though a reasonably prudent police officer would not have acted. Oliveira v. Mayer, supra, 3 F.3d 649. Accordingly, the plaintiff is entitled to summary judgment on the defendants' first special defense of collateral estoppel.
In light of the above, the defendants' motion for summary judgment is hereby granted as to the third count of the plaintiff's complaint which asserts a claim of slander. In all other respects, the defendants' motion for summary judgment is denied. The plaintiff's motion for summary judgment is granted as to the defendants' first special defense of CT Page 3648 collateral estoppel.
BY THE COURT
_________________________ Judge Jon M. Alander