# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-06-00438-CV

**Derrick Dutton, Appellant**

**v.**

**Sheryl Hayes-Pupko, Appellee**

**FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT
NO. 04-961-C277, HONORABLE KEN ANDERSON, JUDGE PRESIDING**

### M E M O R A N D U M   O P I N I O N

Appellant Derrick Dutton appeals from the trial court's order denying his motion for summary judgment based upon his asserted qualified immunity as a police officer. He argues that appellee Sheryl Hayes-Pupko has not met her burden of proving that he acted unreasonably and violated her clearly established constitutional rights and, therefore, that he is entitled to judgment as a matter of law. We disagree and affirm the trial court's order.

### Factual Allegations

Hayes-Pupko filed suit against Dutton, alleging violations of her federal constitutional rights.[1] *See* 42 U.S.C.A. § 1983 (West 2003). She asserted that in 2002, Dutton wrongfully arrested

---

[1] Hayes-Pupko also sued Williamson County, the City of Georgetown, and one other police officer. She initially asserted state tort claims, state constitutional claims, and federal constitutional claims. Her claims against Williamson County, Georgetown, and the other officer have been dismissed or denied, as have her state law claims against Dutton.

her, using excessive force and causing her severe bodily injury in the process. Dutton moved for summary judgment under both the no-evidence and "traditional" standards, *see* Tex. R. Civ. P. 166a(b), (c), (i), asserting that he was shielded by qualified immunity as a police officer. He asserted that Hayes-Pupko had to overcome his assertion of qualified immunity by proving that he (1) violated her clearly established rights and (2) acted unreasonably or in bad faith in doing so.

The parties attached as evidence to the motion for summary judgment and response to the motion Dutton's affidavit, Hayes-Pupko's affidavit and deposition testimony, and both parties' testimony in a pretrial hearing in the criminal case against Hayes-Pupko. Dutton said that on December 6, 2002, he responded to a complaint lodged against Hayes-Pupko by her neighbors, who alleged she had sprayed them with water while they were in their yard. Dutton spoke to Hayes-Pupko, who denied purposefully spraying her neighbors. Dutton asked for her name and date of birth, but Hayes-Pupko refused to give her birth date. Dutton testified that at the time, he believed Hayes-Pupko was required by law to tell him her birth date, although he admits that he now realizes that she did not violate any laws by refusing to do so. Dutton said he told Hayes-Pupko that she could be arrested for failure to identify herself, at which point she began to walk away. Dutton "grabbed her arm" and twisted it behind her back to stop her from leaving and "to effect an arrest" for failure to identify. When he grabbed Hayes-Pupko, she began "spinning around in circles pushing and slapping at my hands, at which time I decided to place handcuffs on her." Dutton then pushed her against her parked car to prevent her from moving and testified that while he tried to pin her, she turned and tried to strike him. After Dutton handcuffed Hayes-Pupko and started to place her in his patrol car, she told him that she had a limited range of motion in her legs and refused to

2

put her legs into the car. He averred that after several requests, he physically placed her legs in the car "[a]s gently as possible." Dutton stated that Hayes-Pupko did not complain about any pain or request medical attention. He said that when he first grabbed her arm and twisted it behind her back, Hayes-Pupko said "no" and may have cried, but he did not recall whether she walked with a limp or told him that her arms could not bend in certain ways.[2] He concluded his affidavit by stating that pinning Hayes-Pupko against the car was a procedure he was taught at the police academy, that he believed he used reasonable force, that he was not aware at the time that Hayes-Pupko had any physical disabilities, and that he had never had any complaints for excessive force lodged against him in the past.

Hayes-Pupko described a very different version of events and testified that Dutton acted irritated with having been called out to address the neighbors' spat and "very forcefully" asked for her name. She said she asked why he needed her name, and he "jumped" at her and demanded her name and birth date. She started to ask him why he needed her birth date, and Dutton "lunged at her," grabbed her arm, and twisted it "as hard as he could" behind her back. She denied walking away, resisting arrest, or attempting to strike Dutton and said that she twisted her body because Dutton was twisting her arm and she was trying to maintain her balance. She testified that she screamed and cried when Dutton twisted her arm behind her, telling him that her arm did not bend

---

[2] Dutton does not dispute that since the incident, he has learned that Hayes-Pupko suffers from various disabilities, including knee problems from an accident in 1983. Hayes-Pupko had postponed knee surgery that was scheduled for the day before this incident and was to remove the "massive hardware" she had in her left leg because "my femur had been shattered and my knee. My right leg, the patella has been split. They were going to take the hardware out of my left leg because I was having extreme pain from that."

that way, and that told her he was "going to make it" twist. Hayes-Pupko testified that when she asked why he was doing this to her, Dutton said, "[B]ecause I can. And he told me to shut up or I'm going to add more charges." She asked what charges he had already, and he said, "I don't know. I'll think of it as I go." Hayes-Pupko testified that her knees started to buckle, and Dutton "threw [her] against" her car and then, with the assistance of another police officer, handcuffed her and pushed her toward the patrol car. Hayes-Pupko testified that she heard her right wrist snap when Dutton wrenched it behind her back to handcuff her. When Dutton told her to get into the patrol car, she told him she could not maneuver into the space because she has limited range of motion in her knees. Dutton told her that if she did not put her legs in the car, he would "make them," and then he and the other officer "stuff[ed]" her into the back of the car, twisting and pushing her knees to force her into the car. Hayes-Pupko testified that she was hyperventilating and crying because of the pain, and that Dutton again told her that if she "didn't shut up he was going to add on more charges." After she was released, she sought medical attention for bruises on her arms and knees, spasms in her left arm, and a fractured right wrist. She testified that Dutton bruised her arm when he grabbed her, that her knees were bruised from being thrown against her car and being forced into the patrol car, and that she still has knee problems due to Dutton's forcing her into the car.

## Discussion

"A government official performing discretionary functions is entitled to qualified immunity unless his conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Bush v. Strain*, 513 F.3d 492, 500 (5th Cir. 2008). As in all summary judgment cases, we view the facts in the light most favorable to the non-movant,

4

indulging all presumptions, resolving any doubts, and taking as true evidence in her favor. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004). "In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). We first ask if the alleged facts, viewed in the plaintiff's favor, show that the officer's conduct violated the plaintiff's constitutional rights. *Id*. at 201. If so, we then ask whether the right was "clearly established" and "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 201-02. "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Id*. at 202. We "apply current law to the first step and the law at the time of the incident to the second step." *Flores v. City of Palacios*, 381 F.3d 391, 395 n.3 (5th Cir. 2004).

Hayes-Pupko alleges that Dutton violated her rights to be free from unlawful arrest and from the excessive use of force. Those are distinct claims and must be analyzed separately. *See Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007). We apply federal law to our inquiries. *See Leo v. Trevino*, No. 13-05-00516-CV, 2006 Tex. App. LEXIS 4918, *7, 10 (Tex. App.—Corpus Christi June 8, 2006, no pet.).

*Unlawful Arrest*

A plaintiff has "a clearly established constitutional right to be free from arrest absent an arrest warrant or probable cause." *Freeman*, 483 F.3d at 411. An officer has probable cause to arrest if, "in light of clearly established law," *Humphrey v. Staszak*, 148 F.3d 719, 727 (7th Cir. 1998), the facts and circumstances known to the officer at the time of the arrest would allow a

5

reasonable person to conclude that the suspect had committed or was committing an offense. *Freeman*, 483 F.3d at 413 (quoting *Flores*, 381 F.3d at 402). An officer is protected by the first prong of qualified immunity if at the time of the arrest, the law is unsettled as to whether the suspect's conduct constitutes an offense. *See Humphrey*, 148 F.3d at 727; *Moore v. The Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1342 (7th Cir. 1985).

The threshold question then is whether, considering the allegations in the light most favorable to Hayes-Pupko, Dutton violated Hayes-Pupko's right to be free of a warrantless arrest not supported by probable cause. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008) ("It is also uncontested that the officers did not have a warrant to arrest Fogarty. Their warrantless arrest of Fogarty therefore violates the Fourth Amendment unless that arrest was supported by probable cause."). Dutton admits that at the time he grabbed Hayes-Pupko's arm, initiating the detention and arrest, she had not committed the offense of failure to identify. *See Freeman*, 483 F.3d at 411-12. In his brief, Dutton does not dispute that Hayes-Pupko had a right to be free from arrest absent probable cause, asserting only that he was mistaken about whether Hayes-Pupko's conduct was a violation of the law. He instead concentrates on arguing that she cannot show that he acted unreasonably in making the arrest. We hold that Hayes-Pupko satisfied the first prong of the test and turn to the second prong of the qualified-immunity inquiry. *See id.* at 415 (qualified immunity protects officer who reasonably but mistakenly violates plaintiff's constitutional rights if reasonable officer would have believed that his conduct conformed to constitutional standards based on information available to him and clearly established law).

Because Hayes-Pupko alleged a violation of her constitutional right to be free from arrest without a warrant or probable cause, we next ask whether under the circumstances that right

6

was clearly established.  *See Saucier*, 533 U.S. at 201.  We ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id*. at 202; *see Freeman*, 483 F.3d at 415.[3]  In other words, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  "The central concept is that of 'fair warning':  The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"  *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).

Taking the facts in the light most favorable to Hayes-Pupko, the record shows that Dutton began to effect an arrest when Hayes-Pupko refused to provide her birth date.[4]  The law on failure to identify was not at the time unsettled or in flux, and Dutton admitted later that he was mistaken in his belief that Hayes-Pupko's refusal to provide her birth date was a criminal offense.  *See* Tex. Penal Code Ann. § 38.02 (West Supp. 2008) (person commits offense of failure to identify

---

[3]  In *Freeman v. Gore*, the court noted that "both the probable cause inquiry . . . and this second prong of the qualified immunity inquiry [asking whether the mistake was reasonable] are framed in terms of how a 'reasonable person' would act."  483 F.3d 404, 415 n.8 (5th Cir. 2007).  The court held that a finding that the officers lacked probable cause, which requires a "reasonable person" inquiry, does not "foreclose the possibility that they might be entitled to qualified immunity."  *Id*.

[4]  Dutton asserts that failure to identify was not the sole basis for the arrest and that he did not decide to arrest Hayes-Pupko until she tried to walk away and slapped at him.  However, we read the facts in the light most favorable to Hayes-Pupko, who alleged that Dutton grabbed her arm and pushed her against the car, telling her he would think up a charge against her, when she started to ask why he needed her birth date.  Further, at the hearing on Hayes-Pupko's criminal case, Dutton agreed when asked, "When you attempted to arrest Ms. Pupko, your only basis, at that point, was for failing to I.D.  Is that correct?"

if she refuses to provide identifying information to officer "who has lawfully arrested the person and requested the information" or if she provides false information to officer who has lawfully arrested or detained her or has good cause to believe she witnessed an offense). Thus, Dutton was not mistaken about the application of "clearly established law" to the facts and circumstances as he believed them to be. *See, e.g.*, *Sauls v. Welch*, No. 3:05-CV-0409-D, 2007 U.S. Dist. LEXIS 53711, *21-23 (N.D. Tex. July 24, 2007) (mem. op. and order dismissing claims). Instead, Dutton made a mistake of law in believing that Hayes-Pupko's conduct, as he perceived it, amounted to an offense. *See Freeman*, 483 F.3d at 413-18 (qualified immunity did not protect officer as matter of law when plaintiff's refusal to allow police to enter home without warrant did not give rise to probable cause to arrest for interference with public duties or for hindering arrest); *Petersen v. Gibson*, No. 97 C 4123, 1998 U.S. Dist. LEXIS 12495, *5-8 (N.D. Ill. Aug. 6, 1998) (mem. op. and order denying motion to dismiss) (not entitled to summary judgment on qualified immunity when plaintiff's conduct as known to officer did not amount to theft of services). *Cf. Humphrey*, 148 F.3d at 727 (qualified immunity applied because law about disorderly conduct was unsettled); *Moore*, 754 F.2d at 1343 (qualified immunity applied because law regarding warrantless entry into home was unsettled).

Qualified immunity protects an officer who is reasonably mistaken about the facts as they actually exist, in light of the established law at the time. Keeping in mind that police officers must "'make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving'" and that we should view the facts with some deference to the officer's "on-scene perspective," *Saucier*, 533 U.S. at 205 (quoting *Graham v. Connor*, 490 U.S. 386, 393, 396-97 (1989)), under the established law, "[n]o reasonable officer could have believed that there was probable cause to arrest" Hayes-Pupko for her failure to provide her birth date, and a reasonable

8

officer would have recognized that her conduct did not "justify an arrest [or] create probable cause."[5]

*Freeman*, 483 F.3d at 415-16; *see also Bashir v. Rockdale County*, 445 F.3d 1323, 1331 (11th Cir. 2006) ("A reasonable law enforcement officer faced with these circumstances would have known he could not enter the home and arrest Bashir without a warrant, exigent circumstances, or consent. That so doing would offend the Fourth Amendment was clearly established by the precedent recounted above. . . ."); *Petersen*, 1998 U.S. Dist. LEXIS 12495, at *12 ("any reasonable officer who had spent as much time with the parties as Officer Gibson would have realized that Petersen lacked criminal intent in light of Illinois law defining theft of services"). Because Dutton did not establish as a matter of law either of the prongs of his qualified-immunity defense, the trial court did not err in denying Dutton's motion for summary judgment on Hayes-Pupko's claim of unlawful arrest.

*Excessive Force*

Having held that Dutton lacked probable cause does not, however, not end the inquiry into whether qualified immunity protects him from Hayes-Pupko's excessive-force claim. *See Bashir*, 445 F.3d at 1332. Whether Hayes-Pupko may proceed with her excessive-force claim is independent of whether Dutton had the power to arrest her. *Id*. A plaintiff alleges a violation of the

---

[5] This case is similar to *Freeman*, in which the police sought to serve an arrest warrant on the plaintiff's son. 483 F.3d at 408. He was not home, so they went to Freeman's house and asked to search for him there. *Id*. She said they could not enter without a warrant for her address, so the police arrested her for hindering apprehension and interference with public duties. *Id*. at 408-09. The court held that Freeman's refusal to allow the police to enter without a warrant did not give rise to probable cause because the officers were not "performing a duty or exercising authority imposed or granted by law" and her behavior did not amount to hindering arrest. *Id*. at 413, 415 (citing Tex. Penal Code Ann. §§ 38.05 (hindering apprehension), .15 (interfering with public duties) (West Supp. 2008)). The court held that "a reasonable officer would have known that he could not lawfully search Freeman's home, and that Freeman was not, therefore, interfering with any exercise of any authority granted to the deputies by law." *Id*. at 414 (footnote omitted).

Fourth Amendment's bar on excessive force if she alleges (1) an injury (2) caused by the officer's "use of force that was excessive to the need," and (3) that the use of force was objectively unreasonable. *Bush*, 513 F.3d at 501. "[M]inor, incidental injuries that occur in connection with the use of handcuffs" will not support a claim for excessive force. *Freeman*, 483 F.3d at 417. The injury suffered must be more than de minimis. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999), *clarified on reh'g*, 186 F.3d 633 (5th Cir. 1999) (quoting *Ikerd v. Blair*, 101 F.3d 430, 434 (5th Cir. 1996)).

> [A]n injury is generally legally cognizable when it results from a degree of force that is . . . objectively unreasonable under the circumstances. The objective reasonableness of the force, in turn, depends on the facts and circumstances of the particular case, such that the need for force determines how much force is constitutionally permissible. Specifically, the court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."

*Bush*, 513 F.3d at 501 (quoting *Graham*, 490 U.S. at 396) (footnotes omitted).

Similar to the facts presented in *Bush*, Hayes-Pupko alleged that Dutton grabbed and twisted her arm, pinned her against the car, and forced her legs into his patrol car, in the process fracturing her right wrist, bruising her knees, leaving bruises on her arm from his fingers, and causing spasms in her left arm. *See id.* at 496, 501 (plaintiff was arrested after she interfered with officer's questioning of witness and in course of arrest, officer "forcefully slammed" her face into car after she was handcuffed and subdued, resulting in injuries to her face, teeth, and jaw). Hayes-Pupko alleged that Dutton "lunged" at her and twisted her arm behind her back before she could finish asking him why he wanted her birth date, that she did not attempt to walk away or resist

10

his use of force, and that he continued to use painful force even after she told him her arm and knees could not bend in the ways he was forcing them. Considering the facts as alleged by Hayes-Pupko, she was being questioned about a minor incident, posed no risk of danger to Dutton or anyone else, and was not attempting to flee or resist arrest when he grabbed her arm and threw her against her car. *See id*. at 501. Thus, we hold that there is evidence that Hayes-Pupko suffered substantial injuries as a direct and sole result of Dutton's use of force "excessive to the need and objectively unreasonable under the circumstances." *See id*. Hayes-Pupko satisfied the first prong of the inquiry.

We next ask whether Dutton's use of force in violation of the Fourth Amendment was "nevertheless objectively reasonable in light of clearly established law at the time." *See id*. To show that Dutton's conduct was objectively unreasonable, we ask whether Hayes-Pupko's right to be free from the degree of force used by Dutton was "clear to a reasonable officer at the scene," considering the specific circumstances, which evolve quickly and require officers to make split-second decisions about the necessary amount of force. *Id*. at 501-02 (citing *Saucier*, 533 U.S. at 201-02, 205). The right to arrest someone "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," and the allowable degree of force depends on the severity of the crime, whether the suspect posed an immediate threat to the officer's safety, and whether the suspect was attempting to flee or resist arrest. *Graham*, 490 U.S. at 396.

The alleged crime for which Hayes-Pupko was being arrested—failure to identify—is a minor offense, the facts as alleged do not show that Dutton had any reason to believe Hayes-Pupko posed an immediate danger to his safety, and Hayes-Pupko was not attempting to "flee" or resist arrest when Dutton grabbed her. *See id.* Dutton did not ask or order Hayes-Pupko to stay where she was, say that he was not finished talking to her, or verbally tell her she was under arrest; instead, he

11

seized her arm, leaving bruises where he grabbed her, and twisted it behind her back. We hold that in light of the circumstances and the offense for which Hayes-Pupko was arrested, a reasonable officer would have known that he could not apply the force that Hayes-Pupko alleged was used, force that she alleged resulted in visible bruises, ongoing knee problems, spasms in one arm, and a broken wrist in the other. *See Bush*, 513 F.3d at 502. Dutton has not shown as a matter of law that he is entitled to qualified immunity on Hayes-Pupko's claim of excessive force. *See id*.

## Conclusion

Dutton did not establish his right to judgment as a matter of law on his assertion of qualified immunity to Hayes-Pupko's claims of unlawful arrest and excessive force. Therefore, the trial court did not err in denying his motion for summary judgment. We affirm the trial court's order.

_____

David Puryear,  Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   August 7, 2008

12