[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
This matter came before the court at short calendar on August 5, 2002 concerning the defendant's motion for summary judgment (#110). For the reasons stated below, the motion is granted in part and denied in part.
 I. BACKGROUND
On April 24, 2001, the plaintiffs, Robert LaPlace (LaPlace) and his wife, Elizabeth LaPlace, filed a five count complaint. They allege that, on October 21, 1999, LaPlace was, driving a motor vehicle on Essex Road in Old Saybrook, Connecticut, at approximately 9:40 p.m. Elizabeth LaPlace was a front seat passenger. They assert that, at that time and place, the defendant, Chris DeMarco (DeMarco), an Old Saybrook patrolman, "drove dangerously close to the rear of the plaintiffs' motor vehicle and shone his bright lights into the plaintiffs' vehicle, blinding the plaintiffs." Complaint, first count, ¶ 2. The plaintiffs' vehicle then turned north on Springbrook Road "to get out of the lights but the blinding lights caused them to swerve a little in making the turn." Complaint, first count, ¶ 3.
They further assert that Demarco turned on his overhead lights, pulled them over and "verbally assaulted these two senior citizens." Complaint, first count, ¶ 4. Thereafter, Demarco arrested LaPlace for driving while intoxicated. The plaintiffs allege that LaPlace had not had any alcohol to drink and that when he blew into a breathalyzer, it registered zero for blood alcohol content. Complaint, first count, ¶ 5.
They also state that, "with the plaintiff's consent," De Marco gave LaPlace a urine test, which also produced negative results as to the presence of alcohol or drugs in his system. Complaint, first count, ¶ 6. Thereafter, charges lodged against LaPlace were dismissed in the Superior Court, G. A. 9, in Middletown. Complaint, first count, ¶ 7. CT Page 13176
In paragraph 8 of the first count, it is alleged that DeMarco acted unlawfully, with malice or wanton disregard for the plaintiffs' rights, "in that he had no probable cause to detain or bring criminal charges against the plaintiff and he did so in violation of the plaintiff'sFourth Amendment rights." Complaint, first count, ¶ 8. In paragraph 9, the plaintiffs claim that they "suffered damages."
The facts alleged in the first count are incorporated by reference in each of the succeeding counts. In the second count, they add that Demarco intentionally and negligently violated their rights under42 U.S.C. § 1983, and that they suffered damages as a result.
In the third count, they allege, in addition to the facts pleaded in the first count, that DeMarco "knew or should have known that his wrongful conduct would cause emotional distress on the plaintiffs." Complaint, third count, ¶ 8. They claim that he negligently and/or intentionally inflicted emotional distress on them, and that they suffered damages. See Complaint, third count, ¶¶ 9-10.
The fourth count adds that the "complaint and charges were in fact false, and there was no reasonable or probable cause for the prosecution." Complaint, fourth count, ¶ 8. The plaintiffs assert also that the complaint and charges were maliciously motivated. See Complaint, fourth count, ¶ 9. In addition, they assert that the "arrest caused the plaintiffs great humiliation, disgrace, mental anguish and physical discomfort. . . ." and that LaPlace was required to retain counsel to defend him against the charges. Complaint, fourth count, ¶ 10.
In the fifth count, paragraph 8 alleges that DeMarco falsely arrested LaPlace and falsely imprisoned him. As a result, the plaintiffs also contend that they "suffered damages."
DeMarco seeks summary judgment on all counts as to each plaintiff. In support of his motion, he submits a memorandum of law. As evidence, he presents his own affidavit (Exhibit A); an affidavit of Jay Rankin, another Old Saybrook police officer (Exhibit B)[1]; and DeMarco's report of the October 21, 1999 incident (Exhibit C).
In response, the plaintiffs submit their memorandum in opposition, as well as their own affidavits (#112). They also present the following exhibits: the results of LaPlace's intoxilyzer (breathalyzer) test (Exhibit 1); the results of his urine test (Exhibits 2A and 2B); his physician's notes concerning a November 2, 1999 visit (Exhibit 3)[2]; the plaintiffs' civilian complaint reports concerning the incident CT Page 13177 (Exhibits 4A and 4B); an AARP driver improvement course completion certificate (Exhibit 5); a letter from an attorney to the plaintiffs' counsel indicating that the criminal charges against LaPlace were dismissed (Exhibit 6); a January, 1988 article from Connecticut magazine concerning the Old Saybrook police department (Exhibit 7A); and an article from The Hartford Courant concerning an alleged beating of another individual involving DeMarco and Rankin, which also allegedly occurred on October 21, 1999 (Exhibit 7B).
 II. STANDARD OF REVIEW
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding on a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." BuellIndustries, Inc. v. Greater New York Mutual Ins. Co., 259 Conn. 527,550, 791 A.2d 489 (2002). "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motionmust provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Emphasis in original.) Mytech v. MayDepartment Stores Co., 260 Conn. 152, 164 n. 8, 793 A.2d 1068 (2002).
Our Supreme Court has elaborated on this subject by stating, "[w]e emphasize the important point, that [a]lthough the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court [in support of a motion for summary judgment]." (Internal quotation marks omitted.) Buell Industries, Inc. v. Greater NewYork Mutual Ins. Co., supra, 259 Conn. 550.
"A material fact . . . [is] a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) H.O.R.S.E. ofConnecticut, Inc. v. Washington, 258 Conn. 553, 560, 783 A.2d 993
(2001). "[T]he court's function is not to decide issues of material fact, but rather to determine whether any such issues exist." Nolan v.CT Page 13178Borkowski, 206 Conn. 495, 500, 538 A.2d 1031 (1988).
"The test is whether a party should be entitled to a directed verdict on the same facts." (Internal quotation marks omitted.) Sherwood v.Danbury Hospital, 252 Conn. 193, 201, 746 A.2d 730 (2000). "Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way. . . . The movant must show that it is quite clear what the truth is, and that excludes any real doubt as to the existence of a any genuine issue of material fact. . . . [A] summary disposition . . . should be on evidence which a jury would not be at liberty to disbelieve and which would require a directed verdict for the moving party. . . . [A] directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict as directed.'" Morascini v. Commissioner ofPublic Safety, 236 Conn. 781, 808-09, 236 A.2d 1340 (1996).
 III. DISCUSSION A. Federal Claims
DeMarco contends that the doctrine of qualified immunity shields him from liability for civil damages stemming from the plaintiffs'Fourth
Amendment claims. In response, the plaintiffs assert that material issues of fact bar summary judgment as to these and all of their claims.
"What is required to satisfy the defense of qualified immunity, which protects public officials from civil actions pursuant to § 1983 arising from the performance of their discretionary functions, is well settled. Although § 1983 on its face admits of no immunities. . . . the United States Supreme Court has held that the qualified immunity defense protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800,818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). [For purposes of a § 1983 claim,] [w]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action . . . assessed in light of the legal rules that were clearly established at the time it was taken. . . . A subjective inquiry into an official's personal belief is rejected in favor of an objective analysis of what a reasonable officer in [the] defendant's position would believe." (Internal quotation marks omitted and citation omitted.) Ham v. Greene,248 Conn. 508, 519-520, 729 A.2d 740, cert. denied, 528 U.S. 929, 120
CT Page 13179 S.Ct. 326, 145 L.Ed.2d 254 (1999).
In determining whether an officer's actions were objectively reasonable, "[t]he court should ask whether the agents acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed after the fact." (Internal quotation marks omitted.) Lee v. Sandberg,136 F.3d 94, 104 (2d Cir. 1997). Nevertheless, "[a] police officer has acted in an objectively unreasonable manner when no officer of reasonable competence could have made the same choice in similar circumstances." (Internal quotation marks omitted.) Id., 102.
"[E]ven where the law and the scope of permissible official conduct are clearly established, the defense of qualified immunity will protect a government official if it was objectively reasonable for him to believe his acts were. . . . Plaintiffs may not unwrap a public officer's cloak of immunity from suit simply by alleging even meritorious factual disputes relating to probable cause, when those controversies are nevertheless not material to the ultimate resolution of the immunity issue." (Citation omitted.) Ham v. Greene, supra, 248 Conn. 520-521.
"The qualified immunity defense is intended to strike a fair balance between (1) the need to provide a realistic avenue for vindication of constitutional guarantees, and (2) the need to protect public officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority. . . . The qualified immunity doctrine protects government officials from civil liability in the performance of discretionary functions as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." (Internal quotation marks omitted and citations omitted.) Lee v. Sandberg, supra, 136 F.3d 100. SeeMalley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271
(1986) (qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law").
"The Fourth Amendment states that the `right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. W. TheFourth Amendment's `central requirement is one of reasonableness.'" Kochv. Town of Brattleboro, Vermont, 287 F.3d 162, 166 (2d Cir. 2002). "[T]he principles of fundamental fairness that are the hallmark of due process permit a brief investigatory detention, even in the absence of probable cause, if the police have a reasonable and articulable suspicion that a person has committed or is about to commit a crime." State v. Lamme,216 Conn. 172, 184, 579 A.2d 484 (1990) (citing Terry v. Ohio, 392 U.S. 1, CT Page 1318088 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); see State v. Oquendo, 223 Conn. 635,654, 613 A.2d 1300 (1992). Such a "reasonable and articulable suspicion" is to be differentiated from probable cause to make an arrest. "Probable cause exists when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested. . . ." (Internal quotation marks, citation and footnote omitted.) Lee v. Sandberg, supra, 136 F.3d 102-103.
DeMarco argues, without citation to authority, that LaPlace "does not have a clearly established constitutional right to avoid a brief investigative detention. . . ." DeMarco's memorandum, p. 8. There is settled law to the contrary. "To prevail on a § 1983 claim under theFourth Amendment based on an allegedly unlawful Terry stop, a plaintiff first must prove that he was seized. [A] seizure does not occur simply because a police officer approaches an individual "and asks a few questions. . . . However, a seizure does occur when, by means of physical force or show of authority. . . ., a police officer detains a person such that a reasonable person would "have believed that he was not free to leave. . . ." (Internal quotation marks omitted and citations omitted.) Brown v. City of Onconta, New York, 221 F.3d 329, 340 (2d Cir. 1999), cert. denied, ___ U.S. ___, 122 S.Ct. 44, 151 L.Ed.2d 16 (2001). "The Supreme Court has stated that the [t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a "seizure' of "persons' under the Fourth Amendment." (Internal quotation marks omitted.) Id., 340-341.
Here, DeMarco concedes that such a seizure occurred when he stopped the LaPlace vehicle. See DeMarco affidavit, ¶ 19; plaintiff's memorandum of law, p. 9.
"In determining whether the detention was justified in a given case, a court must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . A court reviewing the legality of a stop must therefore examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom. . . . These standards . . . mirror those set forth by the United States Supreme Court in Terryv. Ohio, supra, with regard to fourth amendment analysis. . . ." (Internal quotation marks omitted and citations omitted.) State v.Oquendo, supra, 223 Conn. 654. "To determine whether the police had a reasonable and articulable suspicion . . . we look to the totality of the circumstances surrounding the police action." State v. Torres, CT Page 13181230 Conn. 372, 383, 645 A.2d 529 (1994).
With these principles in mind, the court turns to the evidence relating to questions as to whether it was objectively reasonable for DeMarco to have made the stop or whether officers of reasonable competence could disagree as to whether it was justified. In his affidavit, DeMarco asserts that, at about 9:00 p.m. on October 21, 1999, he was traveling eastbound on Essex Road behind what later turned out to be the LaPlace vehicle, when he observed it weaving and swerving and, on three occasions, straddling the double yellow center line. DeMarco Aff., ¶ 12, 14. He then saw it make "a very wide turn nearly striking the stop sign posted on the southbound side of Springbrook Road." DeMarco Aff., ¶ 16. Based on what he believed to be "erratic operation" of the vehicle, DeMarco believed he "had sufficient reasons under the discretion afforded me under Terry v. Ohio to conduct a routine investigative traffic stop." DeMarco Aff, ¶ 17.[3]
In contrast, the plaintiffs contend that DeMarco "manufactured" the stop and ensuing arrest. Plaintiffs' memorandum, p. 6. According to LaPlace, DeMarco "zoomed up behind my car shining his lights into the interior of my car and off my mirrors, temporarily blinding me." LaPlace Aff., ¶ 8. LaPLace then "tried to get out of this light but had trouble seeing the road and may have gone over the yellow line." LaPlace Aff., ¶ 9. After DeMarco activated his flashing lights, LaPlace stopped his vehicle. See LaPlace Aff., ¶ 11.
Elizabeth LaPlace alleges that the statements in her husband's affidavit are true and correct. Elizabeth LaPlace Aff., ¶ 4. She adds that "DeMarco nearly killed us by speeding up behind our vehicle and shining his lights into our vehicle." Elizabeth LaPlace Aff., ¶ 5. Thus, the LaPlaces contend that any erratic driving by LaPlace occurred as a result of improper conduct by DeMarco.
Unquestionably, reading of these opposing affidavits demonstrates that the "whole picture" and the "totality of the circumstnaces" are not before the court. Determining whether or not DeMarco "manufactured" the stop or whether or not LaPlace was driving erratically before DeMarco came up behind him will depend on an evaluation of the parties' respective credibility as witnesses. These factual issues bear directly on the legal principles involved and are not appropriate for resolution by summary judgment.
In analogous contexts, other courts have found that similar issues are not appropriate for resolution by summary adjudication. "Whether the facts are sufficient to establish the lack of probable cause is a CT Page 13182 question ultimately to be determined by the court, but when the facts themselves are disputed, the court may submit the issue of probable cause in the first instance to a jury as a mixed question of fact and law."DeLaurentis v. New Haven, 220 Conn. 225, 252-253, 597 A.2d 807 (1991). See Balogh v. City of Shelton, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. CV99 0067521S (Mar. 18, 2002,Alander, J.) (31 C.L.R. 566) ("The existence of probable cause for the plaintiff's arrest will rest on which version of events the fact finder chooses to believe and the reasonable inferences to be drawn from those facts."); Gregory v. City of Bridgeport, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. CV97 341425 S (May 5, 1999, Skolnick, J.) (24 C.L.R. 454) (reasonableness of stop and detention presents question of fact); Gallegos v. Post, Superior Court, judicial district of Tolland at Rockville, Docket No. CV91 48830 S (November 22, 1996, Hammer, J.) (whether a seizure was reasonable presents "highly factual" question; under the circumstances trial by affidavit is no substitute for trial by jury).
The parties also describe the events which took place after the stop, including the various roadside sobriety tests administered by DeMarco to LaPlace. See DeMarco and LaPlace affidavits. At this juncture, the court need not determine whether any undisputed facts which developed as a result of the stop amounted to probable cause for LaPlace's arrest. If the stop was unreasonable, the facts which were products of it cannot lawfully have given rise to probable cause for the arrest. See State v.Blackman, 246 Conn. 547, 553-558, 716 A.2d 101 (1998); State v. Oquendo, supra, 223 Conn. 655-657.
Accordingly, since there are material facts in dispute, DeMarco's motion for summary judgment concerning the Fourth Amendment claim pleaded by LaPlace in the first count must be denied.
As to the second count. as noted it reiterates the facts pleaded in the first count, while adding that the alleged conduct violates the plaintiffs' rights under 42 U.S.C. § 1983. "Section 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States. . . . Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." (Citations omitted.) Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993), cert. denied,512 U.S. 1240, 114 S.Ct. 2749, 129 L.Ed.2d 867 (1994).
Thus, the first and second counts do not allege different causes of action. They are duplicative of one another. At this juncture, the CT Page 13183 presence of both counts in the case is not prejudicial to the defense. If the case proceeds to trial, it will be up to the trial judge to determine whether both counts should be submitted to the jury. Since the same factual disputes are present with regard to the second count. summary judgment must be denied as to that count as well.
Finally, as to these and the other counts, DeMarco asserts that the complaint does not present any cognizable claim by Elizabeth LaPlace. See DeMarco's memorandum of law, p. 21. As noted, in the first and second counts, the complaint alleges that she was a passenger in the vehicle which LaPlace was driving at the time it was stopped by DeMarco. A passenger may invoke her Fourth Amendment rights in a § 1983 action premised on an illegal traffic stop. See Thomas v. Dickel, 213 F.3d 1023
(8th Cir. 2000), cert. denied, 531 U.S. 1013, 121 S.Ct. 571,148 L.Ed.2d 489
(2000). Accordingly, for the reasons stated above, summary judgment is denied as to Elizabeth LaPlace's claims under the first and second counts.
 B. Governmental Immunity
DeMarco also argues that summary judgment should enter in his favor in connection with the allegations of the third, fourth, and fifth counts of the complaint, based on the doctrine of governmental immunity. See DeMarco's memorandum of law, pp. 12-14.
"The [common law] doctrines that determine the tort liability of municipal employees are well established. . . . Although historically [a] municipality itself was generally immune from liability for its tortious acts at common law. . . . [municipal] employees faced the same personal tort liability as private individuals. . . . Over the years, however, "[t]he doctrine of governmental immunity has provided some exceptions to the general rule of tort liability for municipal employees. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . In contrast, `[m]inisterial' refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted and citations omitted.) Mulligan v. Rioux, 229 Conn. 716,727, 643 A.2d 1226 (1994).
Here, it is not disputed that DeMarco was engaged in discretionary acts when he stopped the LaPlace vehicle and when he subsequently arrested DeMarco. "[T]he ultimate determination of whether qualified immunity CT Page 13184 applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to the applicability of the defense . . . [where] resolution of those factual issues is properly left to the jury." Purzvcki v. Fairfield, 244 Conn. 101, 107-108, 708 A.2d 937
(1998).
The exceptions to the applicability of the defense of governmental immunity are not addressed by the parties. "The immunity from liability for the performance of discretionary acts by a municipal employee is subject to three exceptions or circumstances under which liability may attach even though the act was discretionary: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm; . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws. . . .; and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence. (Citations omitted.) Evon v. Andrews, 211 Conn. 501, 505, 559 A.2d 1131
(1989).
Here, in view of the factual disputes noted above, the third exception may be applicable. Under these circumstances, the resolution of applicability of the defense is for the trier of fact. See Balogh v. Cityof Shelton, supra.
 C. Negligent Infliction of Emotional Distress
DeMarco seeks summary judgment as to the third count, concerning the negligent "infliction of emotional distress, on the grounds that the plaintiffs have failed to establish the necessary elements of the claim. See DeMarco's memorandum of law, pp. 14-15. "[W]hen the nonmoving party will bear the burden of proof at trial, the moving party may meet its burden by showing that the nonmoving party has not offered evidence sufficient to establish the existence of an element essential to its case." In re Unisys Savings Plan Litigation, 74 F.3d 420, 433 (3d Cir. 1996), cert. denied, 519 U.S. 810, 117 S.Ct. 56, 136 L.Ed.2d 19 (1996).
"[R]ecovery for unintentionally-caused emotional distress does not depend on proof of either an ensuing physical injury or a risk of harm from physical impact. . . . [R]ather, . . . in such cases, the defendant would not be liable unless the defendant should have realized that its conduct involved an unreasonable risk of causing emotional distress and that that distress, if it were caused, might result in illness or bodily harm." (Footnote omitted and internal quotation marks omitted.) Perodeauv. Hartford, 259 Conn. 729, 749, 792 A.2d 752 (2002). CT Page 13185
In neither their complaint nor their affidavits do the plaintiffs allege that DeMarco should have realized that his conduct involved an unreasonable risk of causing emotional distress which "might result in illness or bodily harm." In fact, neither of the plaintiffs' affidavits assert that either of them suffered emotional distress at all.[4] In the absence of these necessary elements, DeMarco is entitled to summary judgment as to the third count, to the extent that it alleges negligent infliction of emotional distress.
 D. Intentional Infliction of Emotional Distress
DeMarco also contends that he is entitled to summary judgment as to the third count's allegations of intentional infliction of emotional distress, since it fails to state a claim. See DeMarco's memorandum of law, pp. 15-17.
"Connecticut courts have permitted use of the motion for summary judgment to contest the legal sufficiency of the complaint, even though legal sufficiency is more appropriately tested by a motion to strike."Jewett v. General Dynamics Corp., Superior Court, judicial district of New London at New London, Docket No. 530943 (May 1, 1997, Booth, J.). SeeBoucher Agency, Inc. v. Zimmer, 160 Conn. 404, 409, 279 A.2d 540 (1971). More recently, Judge Sheldon stated, "[T]he appropriateness of granting summary judgment on the ground of failure to plead a valid claim or cause of action finds support both in our law governing the direction of verdicts and in the logic of our summary judgment rules, as traditionally described and formulated." Shareamerica, Inc. v. Ernst Young, Superior Court, judicial district of Waterbury at Waterbury, Docket No. CV 93-0150132 S (July 2, 1999). "Logically, if our standard for granting summary judgment is identical to that for directing a civil verdict, and a civil verdict can lawfully be directed because the pleader has failed to state a valid cause of action, summary judgment can be lawfully granted where the challenged count or pleading is legally deficient." Id.
Our Supreme Court recently reiterated the elements which a plaintiff must prove in order to establish a claim for the intentional infliction of emotional distress. In Appleton v. Board of Education of Stonington,254 Conn. 205, 210, 757 A.2d 1059 (2000), the court restated the four necessary elements: " (1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the CT Page 13186 plaintiff was severe." Id., 210. All four elements must be established. See Biro v. Hirsch, 62 Conn. App. 11, 20, 771 A.2d 129, cert. denied,256 Conn. 908, 772 A.2d 601 (2001).
In the third count, the plaintiffs allege that DeMarco knew or should have known that his conduct would cause them to suffer emotional distress, and that he inflicted emotional distress upon them. See complaint, third count, ¶¶ 8, 9. However, neither of their affidavits allege this necessary element. The third count does not allege, as to either plaintiff, the necessary element that the emotional distress sustained was severe. Likewise, as noted, in their affidavits the plaintiffs do not claim that they suffered emotional distress, let alone emotional distress of a severe nature.[5] Under these circumstances, the court need not determine whether, as a matter of law, the alleged conduct was extreme and outrageous. The third count fails to state a cause of action for the intentional infliction of emotional distress. The plaintiffs have not provided proof of necessary elements to support their claims as to this tort. Accordingly, DeMarco is entitled to summary judgment as to the third count to the extent that it alleges the intentional infliction of emotional distress.
 E. Malicious Prosecution
In the fourth count, the plaintiffs seek to recover based on claims of malicious prosecution. DeMarco contends that he is entitled to summary judgment as to LaPlace's claim, since DeMarco had probable cause, as a matter of law, to arrest him. As to Elizabeth LaPLace, he asserts that she has not stated a cognizable claim. See DeMarco's memorandum of law, pp. 17-18, 21.
"The action of malicious prosecution lies where a civil or criminal action has been instituted with malice and without probable cause, and has terminated unsuccessfully. The plaintiff must allege and prove that the original action, whether civil or criminal, was instituted without probable cause, with malice, and that it terminated in his favor." (Internal quotation marks omitted.) QSP, Inc. v. The Aetna Casualty Surety Co., 256 Conn. 343, 360 n. 16, 773 A.2d 906 (2001).
As noted above, at pp. 10-11, in connection with qualified immunity, the court has found that there are material issues of fact concerning the stop, which led to the arrest. See DeLaurentis v. New Haven, supra,220 Conn. 225, 252-253. For the reasons stated above, those issues also prevent the court from resolving LaPlace's malicious prosecution claim by summary judgment. CT Page 13187
As to Elizabeth LaPlace, it is evident that she has not stated a claim for malicious prosecution. She has not alleged, either in the complaint or in her affidavit, that any action was commenced against her or that such an action terminated in her favor. Accordingly, DeMarco is entitled to summary judgment as to Elizabeth s claim in the fourth count.
 F. False Arrest and False Imprisonment
In the fifth count, the plaintiffs allege that DeMarco falsely arrested LaPlace and falsely imprisoned him. DeMarco asserts that he is entitled to summary judgment as to LaPlace's claim since DeMarco had probable cause for the arrest of LaPlace. He also argues that Elizabeth LaPlace has not stated a cognizable claim. See DeMarco's memorandum of law, pp. 18-21.
"False imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of another." Green v. Donroe, 186 Conn. 265,267, 440 A.2d 973 (1982). "[T]he applicable law for these two causes of action is identical." Outlaw v. City of Meriden, 43 Conn. App. 387, 392,682 A.2d 1112, cert. denied, 239 Conn. 946, 686 A.2d 122 (1996). "A person is not liable for false imprisonment unless his act is done for the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it." (Internal quotation marks omitted.) Rivera v. Double A Transportation, Inc., 248 Conn. 21,31, 727 A.2d 204 (1999).
DeMarco also asserts that LaPlace willingly acquiesced in the instructions given to him after the stop occurred and that, following the roadside sobriety tests, DeMarco had probable cause for LaPlace's arrest. As discussed above, with regard to the stop, material issues of fact remain to be resolved concerning whether or not it was unlawful. If the stop was unlawful, then probable cause was not lawfully established. As noted, at this juncture, the court need not determine whether any undisputed facts about the events which occurred after the stop gave rise to probable cause for the arrest. Under these circumstances, DeMarco's motion for summary judgment as to LaPlace's claim for false imprisonment or false arrest must be denied.
As to Elizabeth LaPlace, she does not claim that she was arrested or imprisoned. The undisputed facts show that she was not arrested. While she claims to have been damaged by LaPlace's arrest, she has not stated a cognizable claim. For example, such a claim does not meet the elements of a claim for bystander emotional distress. See Clohessy v. Bachelor,237 Conn. 31, 56, 675 A.2d 852 (1996). DeMarco is entitled to summary judgment as to Elizabeth LaPlace's claim in the fifth count. CT Page 13188
 CONCLUSION
For the foregoing reasons, DeMarco's motion for summary judgment is granted as to the third count, and as to Elizabeth LaPlace's claims in the fourth and fifth counts. The motion is denied as to the first and second counts, and as to Robert LaPlace's claims in the fourth and fifth counts. It is so ordered.
BY THE COURT
 _______________________________ ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT